**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| CONSTANTINO GEORGIOU, | Civil Action No: 4:21-cv-00418-O |
| Plaintiff, | Jury Trial Demanded |
| v. | |
| SHORE POWER, INC. D/B/A BATTERY JUNCTION; LG CHEM, LTD.; SHENZHEN IMR TECHNOLOGY CO., LTD. D/B/A IMREN AND DOES 1-50, | |
| Defendants. | |

## DEFENDANT LG CHEM, LTD.'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ..........................................................................................................................8

PRESERVATION OF PERSONAL JURISDICTION DEFENSE ................................................10

RELEVANT PROCEDURAL HISTORY ...................................................................................10

FACTUAL BACKGROUND ......................................................................................................12

A.    Plaintiff's personal injury claims ...................................................................................12

B.    Plaintiff's purchase of the incident cell from Battery Junction's website ........................12

C.    LG Chem never intended for consumers to use its 18650 lithium-ion cells as standalone, replaceable batteries .....................................................................................................13

D.    LG Chem never authorized anyone to sell its 18650 lithium-ion cells to vape stores or individual consumers for use as standalone batteries and engaged in escalating efforts to warn consumers of the risks and to prevent third parties from selling its 18650 cells directly to consumers like Plaintiff ...................................................................................13

E.    Battery Junction was well aware of the risks to consumers from using 18650 lithium-ion battery cells as standalone batteries with vaping devices ...................................................15

SUMMARY JUDGMENT STANDARD .....................................................................................16

ARGUMENT AND AUTHORITIES ..........................................................................................17

I.    Plaintiff cannot prove that LG Chem proximately caused Plaintiff's injuries because of the intervening actions of Shore Power d/b/a Battery Junction and other third parties..........................................................................................................................17

II.    Plaintiff's strict liability claims (Count II - Manufacturing Defect and Count III - Marketing Defect) against LG Chem fail as a matter of law...................................18

A.    To survive summary judgment, Plaintiff must offer expert evidence that a defect existed and that the alleged defect caused the injury in question .........18

B.    Plaintiff does not have expert evidence to identify a manufacturing defect or to show that any alleged manufacturing defect caused his injury ..................19

C.    Plaintiff cannot show that any alleged marketing defect caused his injury.....20

III.    Plaintiff's negligence claims (Count I) against LG Chem fail as a matter of law....21

A.    Plaintiff's negligence-based claims fail for the same reasons as his overlapping strict-liability claims .................................................................21

B.    Plaintiff's negligent design claim fails for lack of evidence of a feasible alternative design ...........................................................................................22

C.    Plaintiff's negligent failure to warn claim fails because Plaintiff cannot establish proximate cause and for the additional reason that LG Chem did not owe Plaintiff a duty to warn...........................................................................23

IV.    Plaintiff's breach of implied warranty claim (Count IV) against LG Chem fails as a matter of law .........................................................................................................24

V.    Plaintiff's Magnusson Moss Warranty Act ("MMWA") claim fails as a matter of law ................................................................................................25

    A.    The MMWA is inapplicable here ...............................................................25

    B.    The MMWA does not apply to Plaintiff's personal injury claims.................26

    C.    To the extent Plaintiff would seek non-personal injury damages, he cannot meet threshold jurisdictional requirements ......................................27

VI.   Plaintiff's punitive damages demand fails as a matter of law .................................28

CONCLUSION....................................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abelar v. Harris Cnty. Texas*,
 No. CV H-23-21, 2023 WL 3467214 (S.D. Tex. May 15, 2023) ...........................................23

*Alexander v. Turtur & Assocs., Inc.*,
 146 S.W.3d 113 (Tex. 2004)................................................................................................20

*Am. Tobacco Co., Inc. v. Grinnell*,
 951 S.W.2d 420 (Tex 1997)............................................................................................19, 23

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)............................................................................................................17

*Andrews v. Dial Corp.*,
 143 F. Supp. 3d 522 (W.D. Tex. 2015)...........................................................................25, 26

*Barganier v. Ford Motor Co.*,
 No. 20-1051-WS-M, 2020 WL 2394934 (S.D. Ala. May 12, 2020).....................................28

*Bazan ex rel. Bazan v. Hidalgo Cnty.*,
 246 F.3d 481 (5th Cir. 2001) ..............................................................................................17

*Berg v. Underwood's Hair Adaption Process, Inc.*,
 751 F.2d 136 (2d Cir. 1984)................................................................................................19

*Boelens v. Redman Homes, Inc.*,
 748 F.2d 1058 (5th Cir. 1984) ............................................................................................27

*Brocken v. Entergy Gulf States, Inc.*,
 197 S.W.3d 429 (Tex. App. 2006).......................................................................................24

*Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*,
 770 F.3d 322 (5th Cir. 2014) ..............................................................................................23

*Castillo v. Bos. Sci. Corp.*,
 No. 7:20-CV-123, 2020 WL 5608510 (S.D. Tex. Sept. 18, 2020)........................................22

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)............................................................................................................17

*Coppock v. Nat'l Seating & Mobility, Inc.*,
 121 F.Supp.3d 661, 2015 WL 4637545 (W.D. Tex. 2015) .............................................25, 26

*Cotterell v. General Motors LLC*,
   No. 3:19-cv-822 (MPS), 2019 WL 6894256 (D. Conn. Dec. 18, 2019)...........................27, 28

*Ethicon Endo-Surgery, Inc. v. Gillies*,
   343 S.W.3d 205 (Tex. App.—Dallas 2011, pet. denied) ........................................................19

*Fedrick v. Mercedes-Benz USA, LLC*,
   366 F. Supp. 2d 1190 (N.D. Ga. 2005) ..................................................................................27

*Ford Motor Co. v. Miles*,
   141 S.W.3d 309 (Tex. App.—Dallas 2004, pet. denied) ........................................................22

*Garrett v. Hamilton Standard Controls, Inc.*,
   850 F.2d 253 (5th Cir. 1988) ..................................................................................................22

*Gerber v. Hoffmann-La Roche Inc.*,
   392 F. Supp. 2d 907 (S.D. Tex. 2005) ....................................................................................22

*Gorman v. Saf-T-Mate, Inc.*,
   513 F. Supp. 1028 (N.D. Ind. 1981) ................................................................................27, 28

*Grant v. Cavalier Mfg., Inc.*,
   229 F. Supp. 2d 1332 (M.D. Ala. 2002) .................................................................................27

*Hung Tan Phan v. An Dinh Le*,
   426 S.W.3d 786 (Tex. App. 2012)...........................................................................................29

*Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*,
   995 S.W.2d 661 (Tex.1999)......................................................................................................26

*Johnson v. Thor Motor Coach, Inc.*,
   No. 8:18-CV-1944-T-33TGW, 2018 WL 4520370 (M.D. Fla. Sept. 21, 2018).....................28

*Kelly v. Fleetwood Enter., Inc.*,
   377 F.3d 1034 (9th Cir. 2004) ................................................................................................28

*Kritser v. Beech Aircraft Corp.*,
   479 F.2d 1089 (5th Cir. 1973) ................................................................................................30

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) (en banc) .................................................................................17

*Moreno v. Allison Med., Inc.*,
   No. 3:20-CV-00300, 2022 WL 3702061 (S.D. Tex. Aug. 9, 2022) ........................................22

*Mosley v. Excel Corp.*,
   109 F.3d 1006 (5th Cir. 1997) ................................................................................................22

*Nabours v. Longview Sav. & Loan Ass'n,*
    700 S.W.2d 901 (Tex. 1985).......................................................................................29

*Patterson v. Rohm Gesellschaft,*
    608 F. Supp. 1206 (N.D. Tex. 1985) ........................................................................19

*Plas–Tex, Inc. v. U.S. Steel Corp.,*
    772 S.W.2d 442 (Tex. 1989).......................................................................................25

*Ragas v. Tenn. Gas Pipeline Co.,*
    136 F.3d 455 (5th Cir. 1998) .....................................................................................17

*Richards v. Michelin Tire Corp.,*
    21 F.3d 1048 (11th Cir. 1994) ...................................................................................30

*Samuel–Bassett v. Kia Motors Am., Inc.,*
    357 F.3d 392 (3d Cir. 2004)........................................................................................28

*Sims v. Kia Motors of Am., Inc.,*
    839 F.3d 393 (5th Cir. 2016) .....................................................................................19

*Smith v. Robin Am., Inc.,*
    773 F. Supp. 2d 708 (S.D. Tex. 2011), aff'd, 484 F. App'x 908 (5th Cir. 2012) ....................24

*Thornton v. E.I. Du Pont De Nemours & Co.,*
    22 F.3d 284 (11th Cir. 1994) .....................................................................................18

*Timpte Indus., Inc. v. Gish,*
    286 S.W.3d 306 (Tex. 2009).................................................................................19, 23

*Tubbs v. Hach Co.,*
    2022 WL 17489973 (S.D. Tex. Nov. 7, 2022) .......................................................20

*Voelker v. Porsche Cars North Am., Inc.,*
    353 F.3d 516 (7th Cir. 2003) .....................................................................................27

*Wilson v. Sentry Ins.,*
    993 F. Supp. 2d 662 (E.D. Ky. 2014) .......................................................................19

*Wright v. Ford Motor Co.,*
    508 F.3d 263 (5th Cir. 2007) .....................................................................................19

**Rules**

Fed. R. Civ. P.  26(a)(2)(B)(i)...........................................................................................12

Fed. R. Civ. P. 56........................................................................................................................9

Fed. R. Civ. P. 56(a), (c)(1) ...........................................................................................17

Fed. R. Civ. P. 702 ...................................................................................................20

Local. Civ. R. 56.2-56.7 ...........................................................................................9

**Statutes**

15 U.S.C. §§ 2304(a)(2), (4) ....................................................................................28

15 U.S.C. § 2310(d)(1)–(2) ......................................................................................27

15 U.S.C. § 2310(d)(3)(B) ........................................................................................28

15 U.S.C. § 2311(b)(2) .............................................................................................27

TEX. BUS. & COM.CODE § 2.314(b)(3) .................................................................25

**Other Authorities**

63 Am. Jur. 2d Products Liability § 624 ...................................................................27

Kan. L. Rev. 227, 229 (2015) ...................................................................................26

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| CONSTANTINO GEORGIOU, | |
| Plaintiff, | Civil Action No: 4:21-cv-00418-O |
| | Jury Trial Demanded |
| v. | |
| SHORE POWER, INC. D/B/A BATTERY JUNCTION; LG CHEM, LTD.; SHENZHEN IMR TECHNOLOGY CO., LTD. D/B/A IMREN AND DOES 1-50, | |
| Defendants. | |

## <u>DEFENDANT LG CHEM, LTD.'S BRIEF IN SUPPORT OF</u>
## <u>ITS MOTION FOR SUMMARY JUDGMENT</u>

Subject to and without waiving its personal jurisdiction defense, and pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rules 56.2-56.7, Defendant LG Chem, Ltd. ("LG Chem") hereby submits this Brief in Support of its Motion for Summary Judgment.

## <u>INTRODUCTION</u>

Plaintiff Constantino Georgiou ("Plaintiff") alleges he was injured when an 18650 lithium-ion cell that he was carrying in his pocket for use as a standalone battery to power his e-cigarette vaping device exploded.  Plaintiff alleges that he bought the battery from Connecticut based online retailer Shore Power d/b/a Battery Junction ("Shore Power" or "Battery Junction") on December 8, 2018.  Plaintiff further alleges that LG Chem was the manufacturer of the cell. In discovery, Shore Power introduced evidence that it purchased its supply of 18650 lithium-ion battery cells, including the incident cell it sold to Plaintiff, from Shenzhen IMR Technology Co., Ltd. ("Shenzhen IMR").

LG Chem never conducted any business with either Shore Power/Battery Junction or Shenzhen IMR. In addition, Battery Junction knew that LG 18650 lithium-ion battery cells (including the HG2 model cell at issue in this case) were not intended by the manufacturer to be used by individual consumers as standalone batteries and were not safe to be used by individual consumers as standalone, replaceable batteries for e-cigarette devices. In fact, long before Battery Junction sold the incident cell to Plaintiff, Battery Junction received cease and desist letters regarding its unauthorized sale of 18650 cells to individual consumers. LG Chem's attorneys specifically instructed Battery Junction to cease and desist from selling LG 18650 lithium-ion cells **to anyone**.  Armed with full knowledge of the risks, Shore Power (Battery Junction) continued selling 18650 lithium-ion battery cells to vape stores and individual consumers, like Plaintiff Mr. Georgiou.

There is a factual dispute between Battery Junction and Plaintiff as to whether Battery Junction warned Plaintiff of the risks of carrying an 18650 lithium-ion battery cell loose in his pocket. Battery Junction introduced evidence that it disclosed these risks on its website – including providing a link to additional warnings on LG Chem's website – and that every 18650 battery was sold in packaging with express warnings. Plaintiff testified that he does not remember seeing any of those warnings, that he threw away the receipt and any packaging he received when he purchased the battery, and that he was completely unaware of the danger despite the widespread public information warning against the use by individual consumers of 18650 lithium-ion battery cells (by any manufacturer) as standalone, replaceable vaping batteries.

This factual dispute over whether Battery Junction communicated warnings to Plaintiff does not preclude summary judgment in favor of LG Chem.  To the contrary, these facts

establish that it was the intervening actions of third parties, including Shenzhen IMR and Battery Junction, that proximately caused Plaintiff's injuries – not any conduct by LG Chem.

Plaintiff has asserted five claims for relief against LG Chem – strict liability manufacturing and marketing defect, negligence, breach of implied warranty of merchantability, and violation of the Magnusson-Moss Warranty Act.  (ECF No. 64.)  Plaintiff has no evidence to support essential elements of these claims, and summary judgment should be granted in LG Chem's favor on each of them.

## PRESERVATION OF PERSONAL JURISDICTION DEFENSE

On May 23, 2023, LG Chem filed a Motion to Dismiss Plaintiff's Third Amended Complaint against it for lack of personal jurisdiction or, in the alternative, for failure to state a claim.  (ECF No. 70.)  The Court denied the motion by Order dated November 2, 2023.  (ECF No. 126.)  LG Chem maintains the Court lacks personal jurisdiction over it in this matter and further states that the additional information adduced in discovery since the Motion to Dismiss was briefed further supports its jurisdictional defense and precludes Plaintiff from meeting his burden of proving by a preponderance of the evidence that personal jurisdiction may be exercised over LG Chem consistent with due process.  Nonetheless, in compliance with the deadline provided in the Court's Scheduling Order dated January 24, 2023, which has not been extended, LG Chem moves for summary judgment in its favor on all claims asserted against it, without waiver of its defense of lack of personal jurisdiction.

## RELEVANT PROCEDURAL HISTORY

Plaintiff filed this lawsuit in March 2021, approximately two years after his alleged injury.  (ECF No. 1.)  Plaintiff then waited two more years before serving LG Chem through the Hague Convention on April 4, 2023 (four years after his alleged injury).  LG Chem moved to

dismiss Plaintiff's claims against it for lack of personal jurisdiction and, in the alternative, as time-barred under the applicable statutes of limitations. (ECF No. 70.)

Under the Scheduling Order entered in January 2023, Plaintiff's expert deadline was July 14, 2023. (ECF No. 53.) After missing the expert disclosure deadline by more than a month, Plaintiff sought and obtained an extension of the deadline to designate experts and provide written reports until September 11, 2023. (ECF No. 91.) In its Order granting Plaintiff an extension of time to designate experts, the Court denied Plaintiff's request to extend scheduling Order deadlines, including the deadline to file summary judgment motions.

After the Court granted Plaintiff an extension of time to serve expert disclosures, the parties conferred and agreed on a schedule for the completion of discovery. (ECF No. 105.) As of the filing of this motion, each of the parties and their experts has been deposed, except LG Chem's expert Dr. Troy Hayes, who will be deposed on November 16, 2023.

On September 11, 2023, Plaintiff served his Expert Disclosure listing Rong Yuan, Ph.D., P.E. ("Dr. Yuan") and Levi Dixon, M.S. ("Mr. Dixon") as retained expert witnesses. As to Dr. Yuan, Plaintiff attached an "Expert Report" dated December 1, 2020 and a "Supplemental Report" dated September 11, 2023. (ECF No. 93.) In the September 11, 2023 Supplemental Report, Dr. Yuan expressly stated that she was "withholding" her opinions on design/process defect until she received documents Plaintiff had requested from LG Chem three days earlier. (ECF No. 93-1 at 28.)

After a dispute over whether Dr. Yuan's Supplemental Report satisfied Rule 26(a)(2)(B)(i) and whether Dr. Yuan had the information she needed to render her opinions within the deadline provided by the Court, the parties agreed on November 6, 2023 that Dr. Yuan had all the information she needed to render her opinions. (ECF No. 131.) On November 7,

2023, Plaintiff served Dr. Yuan's Second Supplemental Report and Dr. Yuan was deposed that same day.[1]

Plaintiff's second retained expert, Mr. Levi Dixon, was deposed on November 10, 2023. Shore Power's retained experts, Dr. Michael Stichter and Dr. Alison Vredenburgh, were deposed on November 8 and 9, 2023, respectively.  Plaintiff's medical treater, Ms. Seethal Abraham, PA, was deposed on November 13, 2023.  To the extent only rough drafts of these transcripts are available due to the timing, LG Chem reserves the right to supplement its filing with final copies of the transcripts.

## FACTUAL BACKGROUND

### A.    Plaintiff's personal injury claims.

Plaintiff Constantino Georgiou ("Plaintiff") alleges that he was injured on or about March 17, 2019, when an "LG lithium-ion 18650" battery he purchased for use with his electronic cigarette device allegedly exploded in his pants pocket (the "subject battery" or "incident cell"). (Third Am. Compl. ¶ 59 [ECF No. 64].)  Plaintiff purchased the batteries to use as standalone, replaceable batteries with his vaping device.  (**App. 217-18**, Pl. Ans. to Shore Power Interrog. No. 5.)

An inspection revealed that an external short-circuit occurred when a metallic object in Plaintiff's pocket connected the 18650 battery cell's positively charged top cap with the negatively charged side of the battery cell, causing the battery cell to go into thermal runaway and vent hot gases.  (**App. 236**, Yuan Dep. at 95:3–9.)

### B.    Plaintiff's purchase of the incident cell from Battery Junction's website.

Plaintiff purchased the subject battery on or about December 8, 2018, from Shore

---

[1] Dr. Yuan failed to produce documents requested in her deposition notice.  As of the date of this filing, Plaintiff has not produced the requested information.

Power's online store, "BatteryJunction.com." (**App. 13**, Sales Receipt.) Plaintiff purchased the subject battery online while in Texas, and Battery Junction shipped the subject battery to Plaintiff's address in Texas. (*Id.*) Shore Power purchased its supply of LG 18650 lithium-ion battery cells from Shenzhen IMR Technology Co., Ltd. d/b/a IMREN ("IMREN"). (**App. 127-28**, Shore Power 30(b)(6) Dep. at 34:24-35:2; **App. 14-19**, Shore Power's Purchase Orders to IMREN.)

> **C.     LG Chem never intended for consumers to use its 18650 lithium-ion cells as standalone, replaceable batteries.**

At the relevant time,[2] LG Chem manufactured 18650 lithium-ion cells for use in specific applications by sophisticated companies, such as power tools, where the cells are encased in a battery pack with protective circuitry. (**App. 2-3**, Park Decl. ¶ 10.) LG Chem intended for its 18650 lithium-ion cells to be incorporated with protective circuitry in battery packs, not sold loose to individual consumers as standalone batteries. (**App. 3**, Park Decl. ¶ 11.) Plaintiff's own expert concedes that LG Chem never intended for individual consumers to use its HG2 18650 lithium-ion cells as standalone, replaceable batteries. (**App. 239**, Yuan Dep. at 98:14-16; **App. 240**, *id.* at 99:11-12.)

LG Chem never designed, manufactured, advertised, distributed, or sold any 18650 lithium-ion battery cells to any individual or entity for purposes of resale to consumers as standalone, replaceable batteries in Texas or anywhere else. (**App. 3**, Park Decl. ¶ 11; *see also* **App. 4-5**, Park Decl. ¶¶ 18, 22.)

> **D.     LG Chem never authorized anyone to sell its 18650 lithium-ion cells to vape stores or individual consumers for use as standalone batteries and engaged in escalating efforts to warn consumers of the risks and to prevent third parties from selling its 18650 cells directly to consumers like Plaintiff.**

---

[2] LG Chem no longer manufactures or sells lithium-ion battery cells, after a spin-off of its battery division in December 2020. (**App. 3**, Park Decl. ¶ 10.)

LG Chem never sold any 18650 lithium-ion battery cells to either Shore Power or IMREN.  (**App. 3**, Park Decl. ¶¶ 14–15; **App. 163**, Shore Power 30(b)(6) Dep. at 249:16-20.) LG Chem never authorized Shore Power, IMREN, or anyone else to sell its 18650 lithium-ion cells to consumers for use as standalone, replaceable batteries.  (**App. 3**, Park Decl. ¶ 16; *see also id.* ¶ 12; **App. 4**, Park Decl. ¶, 18.)

To the contrary, LG Chem specifically prohibited use of its 18650 cells as standalone, replaceable consumer batteries, warned against such misuse, and undertook extensive efforts to stop unauthorized third parties from selling its 18650 cells to consumers for use as standalone batteries to power e-cigarette devices.  In addition to the cease and desist letters sent to online retailers, like Battery Junction, LG Chem sent thousands of cease and desist letters to vape stores across the United States, including in Texas, instructing them to immediately stop selling LG 18650 lithium-ion cells if they were doing so.  (**App. 184**, LG Chem's Ans. to Pl.'s Interrog. No. 15.)

LG Chem's cease and desist letters to Battery Junction were only one small part of LG Chem's extensive efforts to prevent the unauthorized distribution of its 18650 cells to individual consumers.  LG Chem expressly prohibited its customers from selling 18650 lithium-ion battery cells to individual consumers for use as standalone, replaceable batteries and specifically prohibited its customers from using HG2 model 18650 lithium-ion cells in e-cigarette devices.  (**App. 183-84**, LG Chem's Ans. to Pl.'s Interrog. No. 15.)  LG Chem posted warnings against individual consumers using LG 18650 lithium-ion cells as replaceable, rechargeable batteries on its website at [www.lgchem.com](www.lgchem.com) beginning in December 2016.  (**App. 196**, LG Chem Website Warnings.)  LG Chem sent cease and desist letters to e-commerce websites and thousands of vape supply retailers and distributors across the United States, telling them to stop selling LG

18650 lithium-ion cells to individual consumers. (**App. 184-85**, LG Chem's Ans. to Pl.'s Interrog. No. 15.) LG Chem joined other battery manufacturers in a public safety campaign stressing that individual consumers should not be handling LG 18650 cells. (**App. 197-215**, Public Safety Campaign.)

### E. Battery Junction was well aware of the risks to consumers from using 18650 lithium-ion battery cells as standalone batteries with vaping devices.

In May 2016, well over a year before Battery Junction sold the subject battery to Plaintiff, Shore Power received a cease and desist letter from another manufacturer of 18650 lithium-ion cells demanding that Shore Power cease selling its (Sony's) stand-alone lithium-ion battery cells without Sony's enclosed protective devices and circuitry. (**App. 20**, Sony Cease and Desist Letter; **App. 130-31**, Shore Power 30(b)(6) Dep. at 47:5-48:14.)[3] Despite receipt of that letter, Shore Power continued selling 18650 lithium-ion battery cells to individual consumers and vape stores. (**App. 126**, Shore Power 30(b)(6) Dep. at 32:21-23.)

Between August 2017 and January 2018, Shore Power received three separate cease and desist letters from LG Chem's attorneys, stating "LGC's Batteries are industrial products that are not intended for consumer use, including but not limited to use in e-cigarette devices," and demanding Shore Power to "immediately[] take down and remove all unauthorized sales postings of LGC's Batteries (including but not limited to LG HG2 . . . battery cells) from your website and servers . . . [.]" (**App. 23-40**, **App. 41-59**, **App. 60-61**, LG Chem Cease and Desist Letters.) Despite receipt of those letters, Shore Power continued selling LG 18650 lithium-ion battery cells to consumers and vape stores. (**App. 143-44**, Shore Power 30(b)(6) Dep. at 127:23-

---

[3] Pursuant to the parties' Confidentiality Agreement, LG Chem has filed redacted copies of one document that Shore Power designated as Confidential and the excerpts of the deposition of Shore Power's 30(b)(6) witness. LG Chem will provide those documents to the Court for *in camera* review.

128:6l; **App. 161-62**, *id.* at 247:16-248:15.)

Shore Power was well aware of the risk to consumers of handling loose 18650 lithium-ion battery cells.   At the time Plaintiff purchased 18650 lithium-ion cells from batteryjunction.com, the Battery Junction website contained the following warning on product listings for lithium-ion cells:

> WARNING:  Unless equipped and 'Protected' with a PCB (protection circuit module) and/or other similar device, lithium ion rechargeable battery cells are not recommended by BatteryJunction.com or our parent and associated companies, or the respective manufacturers, as a stand-alone product.  Misuse of lithium ion rechargeable battery cells can pose a serious risk of personal injury or property damage.

(**App. 63**, Shore Power Website Warning; *see also* **App. 73**, Shore Power Warnings Language.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and evidence on file "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c)(1).  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see also Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").

Once the movant satisfies its burden, "the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial."  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). "The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).  Nor can the

opposing party merely rest on its pleadings; rather, it must "identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998).

Applying these principles, there are no genuine issues of material fact and LG Chem is entitled to summary judgment.

## ARGUMENT AND AUTHORITIES

Plaintiff asserts claims against LG Chem under negligence, strict liability, and warranty theories**.**  LG Chem is entitled to summary judgment because Plaintiffs have no evidence to support the essential elements of their product liability claims against it.

**I.     Plaintiff cannot prove that LG Chem proximately caused Plaintiff's injuries because of the intervening actions of Shore Power d/b/a Battery Junction and other third parties.**

It is undisputed that Shore Power was well aware of the risk of fire to an individual consumer using an 18650 lithium-ion cell as a standalone battery long before Battery Junction sold an LG HG2 18650 lithium-ion battery cell to Plaintiff.  Battery Junction received cease and desist letters from LG Chem's attorneys and from at least one other 18650 manufacturer (Sony) but continued selling loose 18650 cells to vape stores and individual consumers.  (**App. 20**, Sony Cease and Desist Letter.)  In addition, Shore Power posted warnings on its website, including a link to LG Chem's website, which specifically warned consumers that they should not be purchasing or using LG 18650 lithium-ion battery cells as standalone batteries for any purpose. (**App. 63**, Shore Power Website Warning; **App. 74**, LG Chem Website Warnings.)

Plaintiff denies that he saw the warnings on Battery Junction's website, denies that he received written warnings with the shipment of the cells he purchased from Battery Junction, and denies any knowledge of the battery safety public information campaign instructing.  But that is

a dispute between Plaintiff and Shore Power.  The independent actions of Shore Power, who chose to continue selling LG 18650 lithium-ion battery cells to vape stores and individual consumers despite full knowledge of the risks and the manufacturer's express prohibitions, break any causal chain between any alleged defect in LG Chem's product when it left LG Chem's manufacturing facility and the injury suffered by Plaintiff Mr. Georgiou.  *See, e.g.*, *Thornton v. E.I. Du Pont De Nemours & Co.*, 22 F.3d 284, 288 (11th Cir. 1994) (holding that use of an industrial lacquer thinner for removing glue off the floor of a home was superseding cause of injury, because "Du Pont marketed the subject product solely to professionals" and "[t]he product carried a warning" to professionals "of the hazards connected with its use"); *Berg v. Underwood's Hair Adaption Process, Inc.*, 751 F.2d 136, 137 (2d Cir. 1984) (holding a manufacturer of synthetic fibers for use in hairpieces not liable to plaintiffs injured by use of product by third-party medical practitioner who implanted the fibers into their scalps); *Wilson v. Sentry Ins.*, 993 F. Supp. 2d 662, 666 (E.D. Ky. 2014) (intervening actions of plaintiff's employer who disregarded manufacturer's instructions by advising employees to repair a machine with belt running).

## II.     Plaintiff's strict liability claims (Count II - Manufacturing Defect and Count III - Marketing Defect) against LG Chem fail as a matter of law.

### A.     To survive summary judgment, Plaintiff must offer expert evidence that a defect existed and that the alleged defect caused the injury in question.

Strict products liability claims involve alleged defects in a product's design, marketing, or manufacturing.  *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 426 (Tex 1997); *Patterson v. Rohm Gesellschaft*, 608 F. Supp. 1206, 1211 (N.D. Tex. 1985) ("There can be no valid products liability claim without a product which has a defect.")).  All strict liability theories in Texas require evidence that the alleged defect existed and caused the injury in question.

*Timpte Indus., Inc. v. Gish,* 286 S.W.3d 306, 311 (Tex. 2009) (design defect); *Wright v. Ford Motor Co*., 508 F.3d 263, 274 (5th Cir. 2007) (marketing defect).

In addition, regardless of the nature of the alleged defect, Texas law generally requires expert proof to establish that an alleged defect caused the injury. *Sims v. Kia Motors of Am., Inc*., 839 F.3d 393, 409 (5th Cir. 2016) (design defect claim); *Ethicon Endo-Surgery, Inc. v. Gillies*, 343 S.W.3d 205, 211 (Tex. App.—Dallas 2011, pet. denied) (marketing defect claim); *Tubbs v. Hach Co*., 2022 WL 17489973, at *4 (S.D. Tex. Nov. 7, 2022) (design, marketing, and manufacturing defect claims). In particular, as here, "where the causal link is beyond the jury's common understanding, expert testimony is necessary." *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119–20 (Tex. 2004) (citations omitted).

Here, Plaintiff alleges two types of product defect to support his strict liability claims– manufacturing defect (Count II) and marketing defect (Count III). (ECF No. 64.) Plaintiff does not allege strict liability design defect in his Third Amended Complaint.

B.      Plaintiff does not have expert evidence to identify a manufacturing defect or to show that any alleged manufacturing defect caused his injury.

In his expert disclosure served September 11, 2023, Plaintiff identified two experts – Dr. Rong Yuan and Mr. Levi Dixon.[4] At his deposition, Mr. Dixon confirmed that he had no opinions on design or manufacturing defect. At her deposition, Dr. Yuan never identified any purported design or manufacturing defect that, in her opinion, caused the incident.

Further, and more importantly, Dr. Yuan testified that no amount of warnings would make 18650 lithium-ion battery cells safe for individual consumers to handle, that Battery Junction never should have sold the LG HG2 18650 lithium-ion cell to Plaintiff, that Battery Junction sold the incident cell to Plaintiff in direct violation of the LG Chem's cease and desist

---

[4] LG Chem reserves its right to timely move to exclude these experts pursuant to Rule 702.

letters, and that Battery Junction's decision to sell the HG2 to Plaintiff was the producing cause of Plaintiff's injuries.  (**App. 240**, Yuan Dep. at 99:18-22; **App. 246**, Yuan Dep. at 189:18-191:10; **App. 250**, Yuan Dep. at 248:8-20.)

       C.    <u>Plaintiff cannot show that any alleged marketing defect caused his injury.</u>

Plaintiff offers the opinion of Mr. Levi Dixon in support of his allegation that LG Chem's HG2 18650 lithium-ion battery cells were defective for failure to warn.  Mr. Dixon opines that LG Chem's on-cell warnings were inadequate to warn against the risk of carrying a cell loose in a pocket, which is what Plaintiff did in this case.

However, Mr. Dixon also agrees that Shore Power was well aware of the risk of fire to an individual consumer using an 18650 lithium-ion cell as a standalone battery and that Shore Power should never have sold the cell to Plaintiff in the first place.  In addition, Plaintiff's expert Rong Yuan testified at her deposition that no amount of warnings would have made a difference – the problem was that Shore Power should not have sold the cell to Plaintiff in the first place. And Plaintiff's own experts admit that Shore Power's decision to sell an LG 18650 lithium-ion cell to Plaintiff was contrary to LG Chem's intended use, that prior to Plaintiff's purchase LG Chem specifically told Shore Power (through cease and desist letters) to immediately stop selling any 18650 lithium-ion cells to anyone, and that Shore Power sold the cell to Plaintiff in violation of those warnings and instructions.

Based on these facts, Plaintiff cannot establish that LG Chem proximately caused his injury, because it was the intervening actions of Shore Power, and other third parties which decided to sell 18650 lithium-ion cells to individual consumers like Plaintiff, in direct violation of LG Chem's published warnings and prohibitions, that led to the injury.

III.    **Plaintiff's negligence claims (Count I) against LG Chem fail as a matter of law.**

A products liability claim based on negligence requires a showing that (1) the manufacturer owed a legal duty to the plaintiff; (2) the manufacturer breached that duty; (3) the plaintiff suffered an injury as a result of the breach; and (4) the defendant's actions were a proximate cause of the injury.  *Castillo v. Bos. Sci. Corp.*, No. 7:20-CV-123, 2020 WL 5608510, at *7 (S.D. Tex. Sept. 18, 2020); *Gerber v. Hoffmann-La Roche Inc.*, 392 F. Supp. 2d 907 (S.D. Tex. 2005) (citing *Mosley v. Excel Corp.*, 109 F.3d 1006, 1009 (5th Cir. 1997)).

A.    <u>Plaintiff's negligence-based claims fail for the same reasons as his overlapping strict-liability claims.</u>

The Fifth Circuit has recognized that where a negligence cause of action is premised on allegations and evidence directed to whether the product at issue is unreasonably dangerous, failure to prevail on a strict-liability cause of action necessarily dooms the negligence cause of action as well.  *See Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 256–57 (5th Cir. 1988).  "Here, Plaintiff's negligence claim arises out of the same factual basis as [his] products liability claim—that is, [LG Chem's] . . . manufacturing, and marketing of the [18650 lithium-ion cell]. As a result, Plaintiff's negligence theory is encompassed and subsumed in their defective-product theory."  *Moreno v. Allison Med., Inc.*, No. 3:20-CV-00300, 2022 WL 3702061, at *10 (S.D. Tex. Aug. 9, 2022), report and recommendation adopted, No. 3:20-CV-00300, 2022 WL 3703858 (S.D. Tex. Aug. 26, 2022) (citing *Ford Motor Co. v. Miles*, 141 S.W.3d 309, 315 (Tex. App.—Dallas 2004, pet. denied)).  Plaintiff's negligent manufacture or marketing claims thus fails as a matter of law for the reasons outlined above.

B.     Plaintiff's negligent design claim fails for lack of evidence of a feasible
       alternative design.

Plaintiff alleges that LG Chem was negligent in its design of the 18650 lithium-ion cells. (Third Am. Compl. ¶¶ 71(a), (d), (e), (g), 88 [ECF No. 64].)   Plaintiff does not assert an overlapping strict liability design defect claim.[5]

Under Texas law, negligent design and manufacturing claims are predicated on the existence of a safer alternative design for the product.  "Absent an alternative design, a claim for negligent design or manufacturing fails as a matter of law." *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 437 (Tex. 1997) (internal citations omitted).

Plaintiff has no evidence of a design defect or of a feasible alternative design.  Plaintiff's expert, Dr. Rong Yuan, issued a supplemental expert report on November 7, 2023 stating her opinion that LG Chem has been aware of "issues" with the design of its HG2 cell. However, she did not identify what the "issue" was, nor did she identify a formula for the separator material that she deemed safe.  At her deposition, Dr. Yuan admitted that she could not point to anything specific about the separator that she could identify and had not studied it.  (**App. 241**, Yuan Dep. at 108:12-17.)  Further, Dr. Yuan did not identify any evidence to show that LG HG2 18650 lithium-ion cells were not safe for their intended use – in battery packs with protective circuitry. (*See* **App. 240**, Yuan Dep. at 99:8-13.)  Absent proof of a feasible, alternative design, which Plaintiff does not have, Plaintiff's negligent design claims fail as a matter of law.

---

[5] Even if Plaintiff had alleged a strict liability design defect claim, which he did not, any such claim would fail for the same reason – failure to produce evidence of a feasible alternative design.  *Abelar v. Harris Cnty. Texas*, No. CV H-23-21, 2023 WL 3467214, at *4 (S.D. Tex. May 15, 2023); *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 330 (5th Cir. 2014); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009); *see also* TEX. CIV. PRAC. & REM. CODE. § 82.005(a) (statutory requirement to prove existence of "safer alternative design" and that the defect in question "was a producing cause" of the injury alleged).

### C.     Plaintiff's negligent failure to warn claim fails because Plaintiff cannot establish proximate cause and for the additional reason that LG Chem did not owe Plaintiff a duty to warn.

"The component part doctrine distinguishes between duties owed by the manufacturer of the final product and duties owed by a manufacturer who only supplies parts used in the final product." *Smith v. Robin Am., Inc*., 773 F. Supp. 2d 708, 714 (S.D. Tex. 2011), aff'd, 484 F. App'x 908 (5th Cir. 2012) (citing *Bostrom Seating, Inc. v. Crane Carrier Co*., 140 S.W.3d 681 (Tex. 2004)). Under Texas products liability law, "[a] component manufacturer 'has no duty to warn of dangers unless (1) the component itself is defective or (2) it actively participated in the integration of the component into the final system.'" Id. (quoting Ranger Conveying & Supply Co. v. Davis, 254 S.W.3d 471, 482 (Tex. App. 2007)).

It is undisputed that LG Chem intended its HG2 18650 lithium-ion cells to be incorporated with protective circuitry into power tools and sold them for that purpose.  (**App. 2-3**, Park Sec. Decl. ¶¶ 10–11; **App. 239-40**, Yuan Dep. at 98:14-99:12.)  As a component part supplier, LG Chem did not have a duty to warn an ultimate consumer concerning the suitability or safety of the finished product.

Texas law protects component-part manufacturers such as LG Chem.  Once a component-part manufacturer warns the purchaser of the component part, it is incumbent on the purchaser to provide a warning to the ultimate purchaser of the finished product.  *Brocken v. Entergy Gulf States, Inc*., 197 S.W.3d 429, 436 (Tex. App. 2006) (quoting Restatement (Third) of Torts: Products Liability § 5, cmt. b (1998)) ("[W]hen a sophisticated buyer integrates a component into another product, the component seller owes no duty to warn either the immediate buyer or ultimate consumers of dangers arising because the component is unsuited for the special purpose to which the buyer puts it.").

The doctrine protects LG Chem here, where its HG2 18650 lithium-ion cells were only sold to individual consumers because of the unilateral actions of third parties who diverted the cells from their intended use (as a component part) and authorized chain of distribution (industrial customers) and sold them to individual consumers.  The 18650 lithium-ion cell was not inherently dangerous or defective when it left LG Chem's control.  To the contrary, the danger was created only when third parties diverted the product (safe for its intended use in battery packs) into an unintended chain of distribution supplying vape stores and consumers.

## IV.  Plaintiff's breach of implied warranty claim (Count IV) against LG Chem fails as a matter of law.

A plaintiff claiming breach of the implied warranty of merchantability under Texas law must prove: (1) that the merchant sold goods to the plaintiff; (2) that the goods were unmerchantable; (3) that the plaintiff notified the defendant of the breach; and (4) that the plaintiff suffered injury proximately caused by the breach.  *Andrews v. Dial Corp.*, 143 F. Supp. 3d 522, 527 (W.D. Tex. 2015) (citing *Coppock v. Nat'l Seating & Mobility, Inc.*, 121 F.Supp.3d 661, 668–69, 2015 WL 4637545, at *6 (W.D. Tex. 2015)).

To be merchantable under Texas law, goods must be "fit for the ordinary purposes for which such goods are used[.]"  *Andrews*, 143 F. Supp. 3d at 527 (quoting TEX. BUS. & COM.CODE § 2.314(b)(3)).  "[P]roof of a defect is required in an action for breach of implied warranty of merchantability[.]"  *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989).  The defect in an implied warranty of merchantability case is not the same as the defect in a strict products liability case; in an implied warranty of merchantability case, "defect" means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy.  *Id.*

A plaintiff who brings a products liability suit under an implied warranty of merchantability theory is required to prove proximate causation.  *See Coppock*, 121 F.Supp.3d at 668–69, 2015 WL 4637545 at *6; *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 667 (Tex.1999) ("[L]iability for breach of warranty requires a showing of proximate cause[.]").

Here, LG Chem is entitled to summary judgment because Plaintiff has no evidence establishing defect or causation.  "[W]hether some defect caused the [battery] to fail and ignite involves scientific questions, including questions of chemistry, physics, and electrical engineering, outside the common understanding of a layperson."  *Andrews*, 143 F. Supp. 3d at 529.  Plaintiff has offered no expert testimony to support a finding that some defect in the battery caused it to fail.  To the contrary, it is undisputed that the incident occurred because the internal components of the battery cell were exposed to a metal object in Plaintiff's pocket, not because of any design that made the cell unsafe for its ordinary purpose – a component part of a battery pack.

**V.    Plaintiff's Magnusson Moss Warranty Act ("MMWA") claim fails as a matter of law.**

    A.    <u>The MMWA is inapplicable here.</u>

Congress enacted the MMWA in 1975, in response to concerns that consumers were being misled by specious warranties on consumer goods.  Janet W. Steverson & Aaron Munter, *Then and Now: Reviving the Promise of the Magnuson-Moss Warranty Act*, 63 U. Kan. L. Rev. 227, 229 (2015).  The primary impetus behind the MMWA was to allow buyers of consumer products to make informed choices as to which products to purchase by curtailing the use of misleading warranties by the sellers of consumer products.  *Id.*  "The [MMWA's] draftsmen believed that warranties on consumer products often were too complex to be understood, too

varied for consumers to make intelligent market comparisons, and too restrictive for meaningful warranty protection."  *Gorman v. Saf-T-Mate, Inc.*, 513 F. Supp. 1028, 1031 (N.D. Ind. 1981) (quoting Schroeder, *Private Actions under the Magnuson-Moss Warranty Act*, 66 Calif. L. Rev. 1, 2 (1978)).

The MMWA is not an independent cause of action; it only provides "additional damages" for certain breaches of warranty.  *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1200 n.14 (N.D. Ga. 2005).  Under the MMWA, a plaintiff may recover damages, including "cost[s] and expenses . . . reasonably incurred" while prosecuting violations of the MMWA and violations of express or implied warranties.  15 U.S.C. § 2310(d)(1)–(2).[6]

B.     The MMWA does not apply to Plaintiff's personal injury claims.

The MMWA generally does not apply to personal injury claims.  15 U.S.C. § 2311(b)(2). At least one federal appellate court and multiple federal district courts have concluded that "personal injury claims based on a breach of warranty are not cognizable under the [MMWA]." *Voelker v. Porsche Cars North Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003); *Grant v. Cavalier Mfg., Inc.*, 229 F. Supp. 2d 1332, 1334–35, 1338 (M.D. Ala. 2002); *Cotterell v. General Motors LLC*, No. 3:19-cv-822 (MPS), 2019 WL 6894256, at *8 (D. Conn. Dec. 18, 2019) (noting that "the MMWA specifically precludes recovery [under the MMWA] for personal injury"). Commentators agree: "Actions for breach of warranty under the [MMWA] are limited to claims for direct damages only (such as repair, replacement, or refund), as opposed to claims for consequential damages, such as personal injuries, and the Act is therefore inapplicable to products liability cases."  63 Am. Jur. 2d Products Liability § 624.

---

[6] The MMWA contains substantive provisions other than breach of warranty claims.  Plaintiff, however, does not allege any violation of the substantive provisions of the MMWA; he only alleges a breach of implied warranties under state law.  (ECF No. 64, ¶¶ 112-14.)

Although the statute has exceptions, none of those exceptions apply here.  *See* 15 U.S.C. §§ 2304(a)(2), (4); § 2308.  *See, e.g.*, *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1065 n.10 (5th Cir. 1984) (holding that personal injury damages are only available under the MMWA to remedy violations of the requirement "that limitations on liability for consequential damages be conspicuously displayed on the warranty instrument"); *Kelly v. Fleetwood Enter., Inc.*, 377 F.3d 1034, 1038 (9th Cir. 2004).  As the Ninth Circuit concluded in *Kelly*, Congress intended the exceptions to create personal injury liability in the "limited circumstance of 'the warranty wherein the large print giveth but the small print taketh away.' " 377 F.3d at 1038 (quoting *Gorman*, 513 F. Supp. at 1035).  Plaintiff has made no express warranty claim, nor has he alleged any written warranty.  As such, the narrow exceptions do not apply as a matter of law.

C.   <u>To the extent Plaintiff would seek non-personal injury damages, he cannot meet threshold jurisdictional requirements.</u>

Even if Plaintiff had alleged economic damages distinct from his personal injury damages, <u>which he did not</u>, he cannot recover under the MMWA for such damages in federal court because he cannot show that the amount in controversy – separate from any claimed personal injury damages – exceeds $50,000.  *Johnson v. Thor Motor Coach, Inc.*, No. 8:18-CV-1944-T-33TGW, 2018 WL 4520370, at *1 (M.D. Fla. Sept. 21, 2018) (quoting 15 U.S.C. § 2310(d)(3)(B)); *Barganier v. Ford Motor Co.*, No. 20-1051-WS-M, , at *2 (S.D. Ala. May 12, 2020) (personal injury "damages may not be counted toward satisfaction of the $50,000 amount-in-controversy requirement.") (quoting *Cotterell*, 2019 WL 6894256, at *8).); *Boelens*, 748 F.2d at 1069*; Cotterell*, 2019 WL 6894256, at *8; *Samuel–Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 402 (3d Cir. 2004) (noting that neither treble damages nor attorneys' fees may be considered in calculating the jurisdictional amount for a MMWA claim and holding as a matter of law that "the claim [did] not exceed $50,000" and could not be maintained).

Accordingly, LG Chem is entitled to judgment as a matter of law on Plaintiff's breach of implied warranty (Count IV) and MMWA (Count V) claims.

## VI.  Plaintiff's punitive damages demand fails as a matter of law.

Plaintiff does not assert any independent claim for punitive damages. Punitive damages are a form of relief, which requires a viable claim for compensatory relief. *Hung Tan Phan v. An Dinh Le*, 426 S.W.3d 786, 795 (Tex. App. 2012); *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 904 (Tex. 1985). Because, as shown above, Plaintiff cannot recover compensatory relief from LG Chem on his underlying claims, Plaintiff also cannot recover punitive damages.

In addition, even if any of Plaintiff's claims survived summary judgment, LG Chem would still be entitled to judgment in its favor on Plaintiff's punitive damages claims. To recover for punitive damages, Plaintiff must prove by clear and convincing evidence that the harm with respect to which he seeks recovery results from "(1) fraud; (2) malice; or (3) gross negligence." CPRC § 41.003(a), (b). Texas law expressly provides that fraud, malice, or gross negligence must be "prove[n] by clear and convincing evidence" and that the "burden of proof may not be shifted to the defendant or satisfied by evidence of ordinary negligence, bad faith, or a deceptive trade practice." *Id.* § 41.003(b).

Under CPRC § 41.001(7), malice is defined as: "specific intent by the defendant to cause substantial injury to the claimant." Plaintiff lacks clear and convincing evidence that LG Chem had a "specific intent . . . to cause substantial injury to" him and, therefore, he cannot establish malice. Nor can Plaintiff establish gross negligence, which is statutorily defined as "an act or omission":

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence <u>involves an extreme degree of risk</u>, considering the probability and magnitude of the potential harm to others; and

(B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds <u>with conscious indifference to the rights, safety, or welfare of others</u>.

CPRC § 41.001(11) (emphasis added).

Here, Plaintiff can offer no evidence that LG Chem's conduct was with fraud, malice, or gross negligence, much less evidence to meet his burden of proof by clear and convincing evidence.  To the extent Plaintiff's expert, Mr. Dixon, has opined that LG Chem's cease and desist letters to the retailer (Battery Junction), on-cell warnings, website warnings, and public safety campaign were insufficient to apprise Mr. Georgiou of the danger of carrying an 18650 lithium-ion cell loose in his pocket, these facts preclude an award of punitive damages as a matter of law.  *Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1059 (11th Cir. 1994) (courts have "repeatedly held that the issue of punitive damages should not go to the jury when a manufacturer takes steps to warn the plaintiff of the potential danger that injured him; such acts bar a finding of wantonness."); *see also Kritser v. Beech Aircraft Corp.*, 479 F.2d 1089, 1097 (5th Cir. 1973) (affirming the refusal to instruct jury as to punitive damages based on the "fact that the company took such steps to inform . . . of potential danger").  Here, LG Chem did far more than merely attempt to warn—it expressly warned against and prohibited the sale of its product for this use.  Plaintiff has nothing to support punitive damages in the face of such undisputed evidence.

## CONCLUSION

For the foregoing reasons, if the Court does not dismiss LG Chem for lack of personal jurisdiction, the Court should grant summary judgment in favor of LG Chem on all claims asserted against it in Plaintiff's Third Amended Complaint.

Dated: November 13, 2023                         Respectfully submitted,

/s/      *Rachel Hedley*

**DAVID P. STONE – LEAD COUNSEL**
State Bar No. 19289060
David.Stone@nelsonmullins.com
5830 Granite Parkway, Suite 1000
Plano, Texas 75024
Telephone: (469) 484-6100
Facsimile: (469) 828-7217
**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

Rachel Atkin Hedley
Admitted *Pro Hac Vice*
rachel.hedley@nelsonmullins.com
1320 Main Street, 17th Floor
Columbia, South Carolina 29201
Telephone: (803) 255-5565
**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

Kathryn Skagerberg
Texas Bar No. 24058578
Federal ID No. 1121430
Kate.Skagerberg@nelsonmullins.com
Nelson Mullins Riley & Scarborough, LLP
5830 Granite Parkway, Suite 1000
Plano, TX 75024
P: (469) 484-6100
F: (615) 828-7217

*Attorneys for Defendant LG Chem, Ltd.*

## CERTIFICATE OF SERVICE

I certify that on November 13, 2023, a true and correct copy of the foregoing **DEFENDANT LG CHEM, LTD.'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was served on the following counsel of record through the ECF electronic filing system:

A. Craig Eiland
Eiland & Bonnin, P.C.
2200 Market Street
Suite 501
Galveston, TX 77550
Email: ceiland@eilandlaw.com

Sara Craig
Peiffer Wolf Carr Kane Conway & Wise LLP
555 Montgomery Street
Suite 820
San Francisco, CA 94111
Email: scraig@peifferwolf.com

Charles W. Fillmore
The Fillmore Law Firm LLP
201 Main Street
Suite 801
Fort Worth, TX 76102
Email: chad@fillmorefirm.com

Stephen Kyle Voss
Christopher J. Pruitt
Christopher Thomas Nezworski
Brown Pruitt Wambsganss Ferrill & Dean PC
201 Main Street
Suite 801
Fort Worth, TX 76102
Email: kvoss@brownpruitt.com
Email: cpruitt@brownpruitt.com
Email: cnezworski@brownpruitt.com

*/s/ Rachel Hedley*
Rachel Hedley